## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**IRVING BEGAY,**

    **Plaintiff,**

**vs.**                                                                                     **No. CIV-03-0692 RLP**

**JO ANNE B. BARNHART, Commissioner**
**Social Security Administration,**

    **Defendant.**

### MEMORANDUM OPINION AND ORDER

Plaintiff, Irving Begay, brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of the denial of his applications under Title II and Title XVI of the Social Security Act by Defendant, Commissioner of Social Security. For the reasons stated herein, Plaintiff's Motion to Reverse is granted, and this case is remanded to the Commissioner for an immediate award of benefits.

Procedural History

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on March 9, 2001 alleging a disability onset date of December 31, 2000. (Tr. 62-64, 196). His claims were denied at the first and second levels of administrative review. (Tr. 34, 199, 35, 208). Plaintiff sought review by an administrative law judge ("ALJ" herein). Plaintiff's claim was denied on October 23, 2002 following a hearing before the ALJ. (Tr. 11-22). The Appeals Council declined review. (Tr. 6). Plaintiff filed suit in the United States District Court for the District of New Mexico seeking to overturn the Commissioner's denial of his claim. On September 10, 2003 the Commissioner moved to remand the case for a *de novo* administrative hearing pursuant to Sentence 6, 42 U.S.C.A. §405(g).[1]

---

[1] The tape recording of Plaintiff's October 23, 2002 hearing was inaudible.

1

[Docket No. 11]. An Order of Remand was entered on September 12, 2003. [Docket No. 12]. A second administrative hearing was held on February 17, 2004. [Tr. 219-262]. Plaintiff's claim was again denied in a decision dated January 12, 2005. [Tr. 216-226]. Upon Application by the Commissioner the case pending in the District Court was reopened by Order dated December 20, 2005. [Docket No. 14].

## Factual Background

Plaintiff was born on June 20, 1961. (Tr. 196). He has GED and previously worked as a cabinet maker, truss assembler, construction carpenter and production assembler. (Tr. 75, 255, 256).

Plaintiff suffers from a combination of impairments involving his vision, the use of his right hand and arm[2], depression[3] and hypertension[4]. For the purpose of this opinion I will concentrate on his visual impairment.

---

[2]Plaintiff suffered a comminuted impacted fracture of the radius of his right wrist in March 2001 which was treated with a splint, cast and brace. . (Tr. 137, 141, 163, 291-392). In March 2003 x-rays were taken to evaluate his complaint of continued wrist pain. Eventually a mal-union of the radius was diagnosed which was treated by additional surgery, including bone grafting. (Tr. 382, 384-385, 489). As of June 2003, he did not have full use of his right hand, and was advised not to lift anything heavy or to push or pull with that hand. (Tr. 380-381). Plaintiff testified that prior to his second wrist operation lifting more than 10 pounds would result in shooting pain that caused him to drop whatever he was lifting. (Tr. 251). He further stated that he attended physical therapy after surgery and that by February 2004 was able to lift fifteen pounds. (Tr. 252).

[3]Plaintiff takes anti-depressant medication and attends psychotherapy for Major Depression and recurrent Dysthymia Disorder. He also attends an alcoholism prevention program. (Tr. 193,195). He was assigned a Global Assessment of Functioning (GAF) score of 70 in June 2003. A GAF of 61-70 is defined as some mild symptoms (e.g., depressed mood and mild insomnia), or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships. DSM-IV-TR, 34.

[4]Plaintiff has hypertension which is treated with medication. (See, e.g., 110, 144, 123. 137-138, 134). Although not optimally controlled, there is no evidence of any functional impairment caused by hypertension.

The retina of Plaintiff's left eye is detached, rendering him legally blind in that eye.[5] His left eye also has a cataract and signs of early proliferative diabetic retinopathy. (Tr. 180, 191).

As of October 2001 Plaintiff had developed diminished vision in his right eye caused by vitreous floaters[6] which block his line of vision. (Tr. 190). A retinal hole was diagnosed in January 2002, which was treated with argon laser. (Tr. 188-189). Although the visual acuity of the right eye was measured as 20/20, Plaintiff continued to experience floaters which worsened as of February 2003. (Tr. 187, 105, 186, 357). In May 2003, Plaintiff's treating ophthalmologist, Dr. Mark Chiu, noted that Plaintiff often forcefully blinked his eyes multiple time, consistent with blepharospasm[7]. (Tr. 351-355). Examination of the right eye documented mild to moderate vitreous floaters. (Tr. 351). Dr. Chiu stated the presence the floaters in his right eye, combined with blindness in the left eye "could cause significant disability and difficulty reading, working, and driving." (Tr. 352). Plaintiff had repeat laser surgery for a second retinal hole of his right eye on July 14, 2003. (Tr. 431). Plaintiff was referred to Dr. Thomas Carlow for evaluation of blepharospasm. Id. There is evidence by the date of the second administrative hearing this condition was being successfully treated with botox injections. (Tr. 248-250).

Dr. Mark Werner, a non-examining physician, prepared a physical residual functional capacity assessment dated July 10, 2001. (Tr. 165-172). His report was affirmed without comment or

---

[5]Although the retina of Plaintiff's left eye was successfully reattached in March 2001, his vision did not return. (Tr. 117-118, 351). He made continued efforts to improve vision in the left eye, including cataract surgery and lens implantation in May 2002, but vision in that eye remains severely and permanently impaired. (Tr. 366, 443-446, 363, 361, 358-359, 352).

[6]"Spots before the eyes caused by opaque cell fragments in the vitreous humor or lens." www.diseasesdatabase.com; source: NCI Thesaurus, 2004_11_17.

[7]Abnormal, involuntary blinking or spasm of the eyelids. www.nei.nih.gov/health/blepha/index.asp#2

addendum by Dr. Nancy Nickerson on September 7, 2001. (Tr. 172). Dr. Werner submitted a form indicating that Plaintiff retained the physical residual functional capacity for light work. His supporting explanation for this opinion states:

> Clmt alleges disability secondary to visual problems in the left eye.  Clmt has a rhegmatogenous detachment OS, cataract OS, phacodenesis OS, and iridodialysis OS. He underwent in 3/01 a vitrectomy, lensectomy and retinotomy w/o complications. His eye is still healing.  He also fell and broke his right radius.  He has hypertension that is generally controlled with medication. (Tr. 166-167).
>
> No manipulative limitations.  (Tr. 168).
>
> Limited depth perception. (Tr. 168).
>
> Allegations (regarding symptoms) are supported by objective findings.  (Tr. 170).

Of note, Dr. Werner's assessment did not consider the impact of vitreous floaters in Plaintiff's right eye, which had not yet been diagnosed.

> The ALJ posed the following hypothetical question to the Vocational Expert:
>
> (I)f we were to assume a hypothetical individual, exertionally limited to a range of light exertional work as defined by the Administration, with additional nonexertional limited (sic) as follows:  monocular-vision precaution.  This would include limited depth perception, no heights or hazards in the workplace, would . . . prohibit vocational driving or heavy equipment – operating equipment that required depth perception or binocular vision; no low light positions; occasional reading, writing, and small-detail work; mentally limited to . . .maybe four-step, routine processes and . . . moderately limited to adapting to changed in the (inaudible) processes. . . . we also consider the claimant's age of 42, education, high school equivalency, and past work as given. . ."

(Tr. 256).

The VE testified that an individual with these limitations could perform the jobs of small products assembler, jewelry sorter and hand sander of furniture.  (Tr. 257).  The VE was not asked, and did not testify as to the numbers of these jobs available in the regional or national economy.

<u>Standard of Review and Five-Step Evaluation Process</u>

I review the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal principles were applied. <u>Doyal v. Barnhart</u>, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion." <u>Id</u>. (quotations and citation omitted). However, "[a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." <u>Bernal v. Bowen</u>, 851 F.2d 297, 299 (10th Cir. 1988). The agency's failure to apply correct legal standards or demonstrate that it has done so, is also grounds for reversal. <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1019 (10th Cir. 1996). Because judicial review is based on the record as a whole, I have meticulously examined the record in order to determine if the evidence supporting the Commissioner's decision is substantial, taking "into account whatever in the record fairly detracts from its weight." <u>Washington v. Shalala</u>, 37 F.3d 1437, 1439 (10th Cir. 1994). However, I may not reweigh the evidence or substitute my discretion for that of the Commissioner. <u>Kelley v. Chater</u>, 62 F.3d 335, 337 (10th Cir. 1995).

"The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled." <u>Doyal</u>, 331 F.3d at 760. The analysis evaluates whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant suffers from a severe impairment or combination of impairments; (3) the impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation; and (4) the claimant possesses the residual functional capacity to perform his or her past work or (5) other work in the national economy. <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1142 (10th Cir.2004); see §§20 C.F.R. 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof through step four, and, if the claimant meets this burden, then the burden

5

shifts to the Commissioner at step five. <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1171 (10th Cir.2005).

The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful employment since the alleged onset date of his disability of December 31, 2000, (Step 1, Finding No. 2, Tr. 221, 225), that he suffered from severe impairments of retinal detachment, status post fracture of his right radius and depression (Step 2, Finding No. 3, Tr. 225), and that floaters in his right eye, joint dysfunction caused by wrist fracture and depression did not meet or equal the severity necessary for a listed impairment. (Step 3, Finding No. 4, Tr. 222, 225).

The ALJ found that Plaintiff's allegations regarding his limitations were not totally credible, referring generally to the body of his decision for specific support. (Finding No. 5, Tr. 225). The only statement in the body of the opinion which specifically addresses the issue of credibility pertains to Plaintiff's mental health treatment. (Tr. 222).[8]

The ALJ found that Plaintiff had the residual functional capacity to perform a "wide" and "significant" range of light work. (Findings No. 6 & 11, Tr. 225-226). In the body of his opinion, however, he indicated that Plaintiff could perform only a limited range of light work. (Tr. 223, 224). The ALJ relied on the physical capacity assessment prepared by Dr. Werner, with additional limitations related to Plaintiff's vision in posing a hypothetical question to the vocational expert:

> Vocational expert Dee Turner testified that the claimant retained the residual functional capacity to perform light work with restrictions due to the claimant's monocular vision and limited depth perception. The claimant cannot be exposed to

---

[8] It is possible that the ALJ meant to refer to work he thought Plaintiff had performed after his alleged onset date also impacted on his credibility. (Tr. 221). The Commissioner admits that the ALJ misinterpreted the record with regard to the dates of this employment, which actually occurred from August through December 2000 before Plaintiff's alleged date of onset. The Commissioner contends that this error is harmless.

>    unprotected heights or hazardous moving machinery. The claimant cannot drive
>    vocationally or operate equipment which requires the operator to have binocular
>    vision. . . the claimant cannot work in low light conditions. Mr. Begay can
>    occasionally read and write vocationally and perform small detail work. Ms. Turner
>    testified that the claimant was mentally capable of work involving three to four step
>    processes and was moderately limited to adapting to change in processes.

(Tr. 223).

At step four, the ALJ determined that Plaintiff could not return to his past relevant work. (Finding No. 7, Tr. 225).

At step five, the ALJ relied on the testimony of the vocational expert, and found that Plaintiff had the residual functional capacity for a significant number of jobs, including small products) assembler, jewelry sorter and hand sander of furniture. (Finding No. 12, Tr. 224-226; Tr. 257).

Analysis

*I.*     *The ALJ Posed an Incomplete Hypothetical to the Vocational Expert.*

It is settled that hypothetical questions submitted to a vocational expert "must include all (and only) those impairments borne out by the evidentiary record." Evans v. Chater, 55 F.3d 530, 532 (10th Cir.1995). "[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir.1991) (quotation omitted).

In the body of his opinion, the ALJ catalogued Dr. Chiu's treatment and opinions related to Plaintiff's visual impairment. (Tr. 221). Dr. Chiu stated that visual acuity in Plaintiff's right eye was 20/20. However, he also stated that the presence of floaters in that eye resulted in additional limitation to his vision. This opinion is entitled to controlling weight if is it "well-supported by medically acceptable clinical and laboratory diagnostic techniques'" or "consistent with other substantial

evidence in the record." <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir.2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). There is no contrary medical evidence or testimony. The ALJ failed to include limitation to vision caused by floaters in Plaintiff's right eye in the hypothetical question posed to the vocational expert.

## <u>II.     *The Commissioner Failed to Carry Her Burden at Step Five.*</u>

Even if the ALJ's visual RFC finding and the resultant hypothetical question to the VE were supported by substantial evidence, the Commissioner did not carry her burden at step five. At step five, the Commissioner is required to establish that a significant or substantial number of jobs exist in the regional or national economy that Plaintiff can perform. <u>Trimiar v. Sullivan</u>, 966 F.2d 1326, 1329-1330 (10th Cir. 1992). Although the Tenth Circuit has refused to designate a specific number that in all cases would carry this burden, <u>Trimiar</u>, <u>Id.</u>, it is axiomatic that there must be evidence of the number of jobs that are available, in order to determine whether that number is significant or substantial. There is no such evidence in the record. The vocational expert identified the three jobs within Plaintiff's hypothetical residual functional capacity (Tr. 257), but was not asked how many of these jobs were available.

## Conclusion

Plaintiff filed his claim for benefits over five years ago. He has attended two hearings before the Commissioner's ALJ. It took almost a year for the ALJ to render his decision following the second administrative hearing. The agency "is not entitled to adjudicate a case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion." <u>Sisco v. United States Dep't of Health & Human Servs.</u>, 10 F.3d 739, 746 (10th Cir. 1993) (quotation omitted).

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse is granted. The decision of

the Commissioner is reversed and this cause is remanded to the Commissioner for an award of disability benefits.

_____
Richard L. Puglisi
United States Magistrate Judge
(sitting by designation)